IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| KEAIRUS WILSON, | ) |
| | ) |
|     Movant, | ) |
| | ) |
| v. | )   No. 3:18-cv-00735 |
| | ) |
| UNITED STATES OF AMERICA, | )   Judge Trauger |
| | ) |
|     Respondent | ) |

**MEMORANDUM OPINION**

The United States Court of Appeals for the Sixth Circuit authorized the petitioner to file a successive motion to challenge his federal conviction and sentence pursuant to 28 U.S.C. § 2255. (Doc. No. 11.) The petitioner's Amended Motion to Vacate, Set Aside, or Correct Sentence is before the court and has been thoroughly briefed by the parties. (Doc. Nos. 13, 24, 25, 26, 29, 32.) For the reasons that follow, the court will deny the Amended Motion.

### I.  BACKGROUND

In March 2012, a jury found the petitioner guilty of conspiring to participate in a racketeering activity in violation of 18 U.S.C. § 1962(d) (Count 1); two counts of murder in aid of racketeering in violation of 18 U.S.C. § 1959(a)(1) (Counts 2 and 6); two counts of using or carrying of a firearm during and in relation to a crime of violence in violation of 18 U.S.C. § 924(c) (Counts 3 and 7); two counts of murder resulting from the use of a firearm during and in relation to a crime of violence in violation of 18 U.S.C. § 924(j) (Counts 4 and 8); and conspiring to use or carry a firearm during and in relation to a crime of violence in violation of 18 U.S.C. § 924(o) (Count 27). *United States v. Wilson*, No. 3:10-cr-00163-27 (M.D. Tenn.) (Crim. Doc.

No. 1147-8; Crim. Doc. No. 1501; Crim. Doc. No. 1880; Crim. Doc. No. 1911 at 16–17).[1] The court sentenced the petitioner to five concurrent sentences of life imprisonment (Counts 1, 2, 4, 6 and 8), a concurrent sentence of twenty (20) years in prison (Count 27), and consecutive sentences of ten years (Count 3) and twenty-five (25) years (Count 7), to be followed by five years of supervised release, for a total effective prison sentence of life plus thirty-five years. (Crim. Doc. No. 1880 at 3.)

On direct appeal, the Sixth Circuit vacated the petitioner's Section 924(c) convictions (Counts 3 and 7) on the basis that those charges were lesser-included offenses of the Section 924(j) convictions and, therefore, violated the petitioner's rights under the Double Jeopardy Clause. The remaining convictions and sentences were affirmed. *United States v. Wilson*, 579 F. App'x 338, 342 (6th Cir. 2014); (Crim. Doc. No. 2066 at 15). The United States Supreme Court denied the petitioner's petition for a writ of certiorari. (Crim. Doc. Nos. 2087, 2091.) This court later entered an Amended Judgment deleting the consecutive ten-year (Count 3) and twenty-five (25) year (Count 7) sentences for the convictions that had been vacated and sentencing the petitioner to an effective total sentence of life in prison on the remaining convictions. (Crim. Doc. No. 2121.)

The petitioner's first motion under Section 2255 claimed that his trial counsel was ineffective in various ways in connection with the failure to obtain a beneficial plea deal. *Wilson v. United States*, No. 3:15-cv-01058, slip op. at 2 (M.D. Tenn. June 22, 2016). This court denied relief on those claims, and the petitioner did not appeal. *Id.*

The Sixth Circuit authorized the petitioner to file this second Section 2255 action

---

[1] The court will cite to documents filed in the underlying criminal proceedings as "Crim. Doc. No. __" and to documents filed in this post-conviction proceeding as "Doc. No. __."

pursuant to 28 U.S.C. §§ 2244(b) and 2255(h) in order to determine whether three of his remaining convictions are valid in light of the unconstitutionality of Section 924(c)'s residual clause.[2] (Doc. No. 11.) Specifically, the petitioner claims in the Amended Motion that his convictions on Counts 4, 8, and 27 must be vacated because they rest on predicate offenses—murder in aid of racketeering—that do not qualify as crimes of violence under the elements clause of Section 924(c). (Doc. No. 13 at 3–4.) In a Supplement to his Amended Motion, the petitioner claims that another possible predicate—conspiring to racketeer—to his conviction for Count 27 also fails to qualify as a "crime of violence" necessary to support his conviction. (Doc. No. 24.)

The government opposes the Amended Motion on the grounds that: (1) the petitioner's claims are procedurally defaulted; (2) murder is a crime of violence under the elements clause of Section 924(c); and (3) the petitioner's supplemental claim about the validity of RICO conspiracy as a predicate to his conviction was not authorized by the Sixth Circuit and is not supported by the record. (Doc. No. 25.)

## II. LEGAL FRAMEWORK

### A. 28 U.S.C. § 2255

Section 2255 provides a statutory mechanism for challenging the imposition of a federal conviction or sentence:

---

[2] At the time the Sixth Circuit authorized this action, the validity of Section 924(c)'s residual clause was still in question and was being debated as an application of *Johnson v. United States*, 135 S. Ct. 2551 (2015), and *Sessions v. Dimaya*, 138 S. Ct. 1204 (2018), which struck down similar provisions. (Doc. No. 11 at 3.) Months later, the United States Supreme Court answered that question by holding that Section 924(c)(3)(B) is indeed unconstitutionally vague. *United States v. Davis*, 139 S. Ct. 2319, 2336 (2019).

3

> A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

28 U.S.C. § 2255(a). To obtain relief under Section 2255, a movant "'must demonstrate the existence of an error of constitutional magnitude which had a substantial and injurious effect or influence on the guilty plea or the jury's verdict.'" *Humphress v. United States*, 398 F.3d 855, 858 (6th Cir. 2005) (quoting *Griffin v. United States*, 330 F.3d 733, 736 (6th Cir. 2003)). Non-constitutional errors are outside the scope of Section 2255 relief, except under rare circumstances. *United States v. Cofield*, 233 F.3d 405, 407 (6th Cir. 2000). In Section 2255 proceedings, it is the movant's burden to show his entitlement to relief. *Potter v. United States*, 887 F.3d 785, 787–88 (6th Cir. 2018). Generally, claims that a movant failed to raise at trial or on direct review are procedurally defaulted. *Massaro v. United States*, 538 U.S. 500, 504 (2003). Under the doctrine of procedural default, a defendant who fails to raise an issue on direct appeal may not raise that issue in a § 2255 motion unless he can establish cause and prejudice to excuse his failure or establish actual innocence. *Bousley v. United States*, 523 U.S. 614, 622 (1998).

If a factual dispute arises in a Section 2255 proceeding, the court is to hold an evidentiary hearing to resolve the dispute. *Ray v. United States*, 721 F.3d 758, 761 (6th Cir. 2013). However, "there is no reason to conduct an evidentiary hearing to resolve a purely legal issue." *Bryan v. United States*, 721 F.2d 572, 577 (6th Cir. 1983). Here, the movant's Section 2255 motion only presents legal issues, rather than factual ones. Thus, having reviewed the pleadings, briefs, and records filed in the underlying criminal case, as well as the filings in this case, the court finds it unnecessary to hold an evidentiary hearing.

4

### B.     18 U.S.C. § 924(c)

Section 924(c) provides enhanced penalties for "any person who, during and in relation to any crime of violence . . . uses or carries a firearm, or who, in furtherance of any such crime, possesses a firearm." 18 U.S.C. § 924(c)(1)(A). An individual convicted of a crime of violence during which a firearm is discharged is subject to a mandatory minimum sentence of ten years "in addition to the punishment provided" for the underlying crime of violence. 18 U.S.C. § 924(c)(1)(A)(i), (iii). Section 924(c)(3) defines "crime of violence" as "an offense that is a felony" and that:

> (A) has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or
>
> (B) that by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.

18 U.S.C. § 924(c)(3). Courts commonly refer to § 924(c)(3)(A) as the "force clause" or "elements clause" and to § 924(c)(3)(B) as the "residual clause."

"[P]hysical force" is "violent force—that is, force capable of causing physical pain or injury to another person." *Johnson v. United States*, 559 U.S. 133, 140 (2010)*; see also United States v. Rafidi*, 829 F.3d 437, 445–46 (6th Cir. 2016) (applying *Johnson*'s definition of "physical force" to Section 924(c)(3)(A)).

In *Johnson v. United States* ("*Johnson II*"), 576 U.S. 591 (2015), the Supreme Court invalidated the so-called residual clause of the Armed Career Criminal Act (ACCA), 18 U.S.C. § 924(e)(2)(B)(ii), as unconstitutionally vague under the Due Process Clause of the Fifth Amendment. 576 U.S. at 606. The Supreme Court later held that *Johnson II* was a substantive decision that applied retroactively on collateral review. *Welch v. United States*, 136 S. Ct. 1257,

5

1268 (2016). On June 24, 2019, the Supreme Court held that Section 924(c)(3)(B), like the ACCA's residual clause, is unconstitutionally vague. *Davis*, 139 S. Ct. at 2336. The Sixth Circuit has held that *Davis* announced a new rule of constitutional law that retroactively applies to cases on collateral review. *In re Franklin*, 950 F.3d 909, 911 (6th Cir. 2020).

### C. Categorical and Modified Categorical Approaches

Courts are to use a "categorical approach" to determine whether an offense satisfies the elements clause of Section 924(c). *Wingate v. United States*, 969 F.3d 251, 263 (6th Cir. 2020). This approach requires the court to "focus[] on the statutory definition of the offense, rather than the manner in which an offender may have violated the statute in a particular circumstance." *Id.* (quoting *Manners v. United States*, 947 F.3d 377, 379 (6th Cir. 2020)). The court "must determine whether the minimum criminalized conduct" covered by the statute "necessarily involves physical force as contemplated in § 92(c)(3)(A)." *Id.* (citing *Moncrieffe v. Holder*, 569 U.S. 184, 191 (2013)).

When a statute is "divisible," meaning that it "list[s] elements in the alternative, and thereby define[s] multiple crimes," courts must turn to the "modified categorical approach" to determine whether the crime for which the defendant was convicted satisfies the elements clause. *Manners*, 947 F.3d at 380 (quoting *Mathis*, 136 S. Ct. at 2249). Under the modified categorical approach, courts consult a "limited class of documents—so called '*Shepard* documents'— includ[ing] 'the indictment, jury instructions, or plea agreement and colloquy'" to identify which of the alternative sets of elements was the basis for the defendant's conviction. *United States v. Burris*, 912 F.3d 386, 393 (6th Cir. 2019) (quoting *Mathis*, 136 S.Ct. at 2249). The court then determines whether those particular elements satisfy Section 924(c)(3)(A). *Id.* A criminal statute

6

is not divisible, however, when it merely lists "alternative factual *means*" of satisfying a single element; to trigger the modified categorical approach, the statute must "list multiple alternative sets of *elements*." (*Id.*) (emphasis in original).

### III. ANALYSIS

**A.     Procedural Default**

A Section 2255 motion is not a substitute for a direct appeal. Consequently, as a general rule, any claims not raised on direct appeal are procedurally defaulted and may not be raised on collateral review unless the movant shows "(1) 'cause' excusing [the] procedural default, and (2) 'actual prejudice' resulting from the errors," *United States v. Frady*, 456 U.S. 152, 168 (1982), or demonstrates that he is "'actually innocent.'" *Bousley*, 523 U.S. at 622 (citation omitted).

The government argues that the petitioner cannot establish cause to excuse his default. (Doc. No. 25 at 5–6.)  But the petitioner alleges that his guilt on the counts in question was premised on invalid predicates and that he thus satisfies the "actually innocent" option to overcome his default. (Doc. No. 26 at 1–2.)  The government contests the petitioner's actual innocence argument by addressing the merits of his claims. (Doc. No. 25 at 6 et seq.)  The petitioner argues, therefore, that separate analysis of the default issue is inconsequential:

> [T]he Court should move directly to merits since that will resolve the issue of default.  If Wilson prevails on the merits, he automatically overcomes default; if he fails on the merits, default makes no difference.  The government's discussion of default and cause-and-prejudice is an unnecessary detour.

(Doc. No. 26 at 2.)

This court has repeatedly held that petitioners bringing otherwise meritorious *Davis* claims have cause and prejudice excusing a default that occurred around the same time as the

7

petitioner's. *See Pettus v. United States*, No. 3:18-cv-00736 (M.D. Tenn. Feb. 2, 2021); *Hall v. United States*, No. 3:20-cv-00646, 2021 WL 119638 (M.D. Tenn. Jan. 13, 2021); *Serrano v. United States*, No. 3:19-CV-00719, 2020 WL 5653478, at *8 (M.D. Tenn. Sept. 23, 2020). Nevertheless, the court agrees with the petitioner that this case presents no need to belabor the question of whether the petitioner's claims are defaulted.[3] Accordingly, the court proceeds to the merits of the petitioner's claims.

## B. Merits of the Authorized Claims

The petitioner challenges his convictions on Counts 4, 8, and 27. Counts 4 and 8 of the Second Superseding Indictment charged the petitioner with murder resulting from the use of a firearm during and in relation to a crime of violence in violation of 18 U.S.C. § 924(j). Section 924(j) requires an offense to occur "in the course of a violation of subsection (c)," which defines a crime of violence by the elements clause and now-invalid residual clause quoted above. 18 U.S.C. §§ 924(c), 924(j), 924(o). Counts 4 and 8 charged crimes of violence by incorporating the charges in Counts 3 and 7, respectively. (Crim. Doc. No. 1147 at 38, 42.) Counts 3 and 7, in turn, were predicated on the charges in Counts 2 and 6 for murder in aid of racketeering. (*Id.* at 35–37, 40–41.) The counts for murder in aid of racketeering were charged as violations of 18 U.S.C. §§ 1959(a)(1) and (2), with the murders themselves alleged to be "in violation of the laws of the State of Tennessee, that is Tennessee Code annotated Sections 39-13-201, 39-13-202, 39-11-401, and 39-11-402." (*Id.* at 36, 40.)

Count 27 charged the petitioner with conspiracy to use and carry firearms during and in

---

[3] It is sometimes appropriate for a court to "reach[] beyond the procedural-default analysis to address the underlying claim on the merits when it 'present[s] a more straightforward ground for decision.'" *Wade v. Timmerman-Cooper*, 785 F.3d 1059, 1077 (6th Cir. 2015) (quoting *Arias v. Hudson*, 589 F.3d 315, 316 (6th Cir. 2009)).

8

relation to crimes of violence in violation of 18 U.S.C. § 924(o). Like Section 924(j), Section 924(o) also includes as an element "an offense under subsection (c)." Specifically, Count 27 identified the possible qualifying underlying crimes of violence as "conspiracy to participate in a racketeering enterprise, murder in aid of racketeering, and assault with a dangerous weapon in aid of racketeering," as set forth elsewhere in the Second Superseding Indictment. (Crim. Doc. No. 1147 at 61.)

This case thus turns on whether the petitioner's convictions for murder in aid of racketeering in Counts 2 and 6 constitute crimes of violence sufficient to sustain his convictions for Counts 4, 8, and 27. Murder in aid of racketeering is a violation of 18 U.S.C. § 1959, which is known as the Violent Crimes in Aid of Racketeering Activity (VICAR) statute. The VICAR statute provides in relevant part as follows:

> (a) Whoever, as consideration for the receipt of, or as consideration for a promise or agreement to pay, anything of pecuniary value from an enterprise engaged in racketeering activity, or for the purpose of gaining entrance to or maintaining or increasing position in an enterprise engaged in racketeering activity, murders, kidnaps, maims, assaults with a dangerous weapon, commits assault resulting in serious bodily injury upon, or threatens to commit a crime of violence against any individual in violation of the laws of any State or the United States, or attempts or conspires so to do, shall be punished—
>
> > (1) for murder, by death or life imprisonment, or a fine under this title, or both.

18 U.S.C. § 1959(a)(1). Because the residual clause of Section 924(c) has been invalidated, VICAR murder is only a crime of violence for the purpose of supporting the petitioner's convictions on Counts 4, 8, and 27 if it satisfies the elements clause of Section 924(c)(3)(A). The petitioner claims that it does not. (Doc. No. 13 at 5.) Specifically, the petitioner asserts that the underlying Tennessee murder felony does not have, as an element, the use, attempted use, or threatened use of force because it encompasses murder by poisoning, which does not involve

9

violent force. (*Id.*) He also argues that Tennessee murder encompasses crimes of inaction, such as failure to feed a victim resulting in starvation, and that such crimes do not involve the physical force necessary to satisfy the elements clause.[4] (Doc. No. 26 at 9–12.)

The government first disputes that the elements of murder in Tennessee law are even material to this case. (Doc. No. 25 at 7–13.) Instead, the government argues that the relevant offense in a VICAR murder conviction is the generic, federal offense of murder. (*Id.*) The petitioner relies on the language of the indictment and the jury instructions in his case, both of which included Tennessee law about the crime of murder, to establish that the elements of Tennessee murder are determinative to his claim. (Doc. No. 26 at 4–7.)

As this court recently observed in a nearly identical Section 2255 action brought by one of the petitioner's co-defendants, the counts charging them with murder in aid of racketeering referenced Tennessee law but technically charged them with violating the VICAR murder statute. *Hall*, 2021 WL 119638, at *7. Accordingly, the court looks first to the VICAR statute to determine whether its elements categorically establish a crime of violence that satisfies the elements clause of Section 924(c).

The VICAR statute, 18 U.S.C. § 1959(a) "is 'divisible' into different substantive offenses because it 'list[s] elements in the alternative, and thereby define[s] multiple crimes.'" *Manners v. United States*, 947 F.3d 377, 380 (6th Cir. 2020) (quoting *Mathis v. United States*, 136 S. Ct.

---

[4] The court observes that the petitioner did not raise this point until his Reply; his Amended Petition relied only on murder by poison to support his claim that the Tennessee murder felony does not satisfy the elements clause. The court accordingly permitted the government to respond to this newly-raised argument by filing a Sur-Reply. (Doc. Nos. 27–29.) While the court will consider this argument because it goes directly to the ultimate question authorized by the Sixth Circuit and raised by the Amended Petition, the petitioner's assertion in his Reply that the government "missed the mark" by focusing on the poisoning issue directly raised by the Amended Petition is undeserved. (*See* Doc. No. 26 at 12.)

10

2243, 2249 (2016)). In addition to establishing multiple separate crimes—murder, kidnapping, assault with a dangerous weapon, etc. in aid of racketeering—the statute also provides that those underlying crimes may be in violation of either state or federal law. 18 U.S.C. § 1959(a). This divisibility requires the court to employ the modified categorical approach and examine the relevant *Shepard* documents to identify the offense for which the petitioner was convicted. *Mathis*, 136 S. Ct. at 2245–46. In this case, the Sixth Circuit has already conducted that analysis and determined that the offense for which the petitioner was actually convicted was defined by the elements of Tenn. Code Ann. § 39-13-202(a)(1), the state law prohibiting "premeditated and intentional murder." (Doc. No. 11 at 4.) Accordingly, when the Sixth Circuit authorized this second Section 2255 proceeding, it identified the issue to be resolved (in addition to the validity of Section 924(c)'s residual clause, which has now been resolved by *Davis*) as whether "a violation of Tenn. Code Ann. § 39-13-202(a)(1) is categorically a crime of violence in that it involves the use of violent physical force." (Doc. No. 11 at 5.)

The parties also disagree about the next stage of the analysis: whether premeditated and intentional murder under Tennessee law satisfies the elements clause of Section 924(c). They debate whether Tennessee's premeditated murder statute covers killing by withholding food or other aid the perpetrator is obligated to provide, and they debate whether a killing by such inaction or by poisoning the victim involves violent physical force. But again, this court considered those very issues just weeks ago in a case brought by one of the petitioner's co-defendants and observed that "[r]egardless of the approach employed and regardless of how broadly murder is defined by the underlying state statute, courts have unanimously agreed that murder, including murder by starvation or other acts of omission, is a crime of violence." *Hall*, 2021 WL 119638, at *8. The court thus adopts its analysis and conclusion from that case as

11

follows:

> [T]he Fourth Circuit has held that first degree murder under a Virginia statute, which expressly includes "murder . . . by poison, lying in wait, imprisonment, [and] starving," Va. Code § 18.2-32, is a crime of violence for purposes of § 924(c). *United States v. Mathis*, 932 F.3d 242 (4th Cir. 2019), *cert. denied sub nom. Uhuru v. United States*, 140 S. Ct. 639 (2019), and *Stokes v. United States*, 140 S. Ct. 640 (2019). In *Mathis*, the court rejected the defendants' argument to the contrary, which mirrors that of [the petitioner] here:
>
>> The capital defendants contend that Virginia's definition of first-degree murder . . . does not require the use or threatened use of force against another, because a defendant can violate the statute by using non-violent, indirect means, such as "poison[ing]" a victim. . . .
>>
>> This line of reasoning, however, is foreclosed by the Supreme Court's decision in *United States v. Castleman*, in which the Court held that "physical force is simply force exerted by and through" human action and that, therefore, a person need not "directly" touch his victim to exert "physical force." Accordingly, so long as an offender's use of physical force, whether direct or indirect, could cause a violent result, the force used categorically is violent. . . .
>>
>> A conviction for first-degree murder under Virginia law requires the "willful, deliberate, and premeditated" killing of another. Va. Code § 18.2-32. Murder requires the use of force capable of causing physical pain or injury to another person irrespective whether that force is exerted directly or indirectly by a defendant. Therefore, we conclude that the crime of first-degree murder under Virginia law qualifies categorically as a crime of violence under the force clause . . . .
>
> [*Mathis*, 932 F.2d] at 264–65 (quoting *Castleman*, 572 U.S. 157, 170–71 (2014); other internal citations and quotation marks omitted).
>
> Similarly, in *United States v. Peeples*, 879 F.3d 282, 287 (8th Cir. 2018), the court held that attempted murder under Iowa law was a crime of violence for purposes of U.S.S.G. § 2K2.1(a)(4)(A), rejecting the defendant's argument that the statute was too broad because it would extend to "a care-giver failing to provide sustenance to a dependent." The court stated:
>
>> The phrase "any act by which the person expects to set in motion a force or chain of events" would include omissions as Peeples argues. However, the statute still requires the use of force, satisfying the violent force requirement under the Guidelines. In Peeples's example of a care-giver refusing to feed a dependent, it

12

> is the act of withholding food with the intent to cause the dependent to starve to death that constitutes the use of force. It does not matter that the harm occurs indirectly as a result of malnutrition. Because it is impossible to cause bodily injury without force, it would also be impossible to cause death without force.

*Id.* (citing *Castleman*, 572 U.S. [at] 170−71). *Accord United States v. Sierra*, 782 F. App'x 16, 20–21 & n.2 (2d Cir. 2019) (affirming a § 924(c) conviction predicated on murder-in-aid-of-racketeering, holding that it was "self-evident that under New York law 'attempted murder is a crime unmistakably involving the use of physical force' " and, therefore, "that murder is a crime involving the use of such force."); *Boykin v. United States*, No. 16 CV 4185 (CM), 2020 WL 774293, at *1 (S.D.N.Y. Feb. 18, 2020) ("[M]urder itself is a crime of violence under § 924(c)(3)(A), the constitutionality of which was not affected by the ruling in *Davis*. Contrary to Boykin's strained argument, the crime of murder has always been understood to be a crime of violence—indeed, the ultimate crime of violence. . . ."); *id.* at *8 ("After *Castleman*, every Circuit but one has concluded that [an] act[ ] of omission such as withholding food or medicine . . . qualifies as an act of physical force."); *United States v. Davis*, No. 4:18-cr-00011, 2019 WL 3307235, at *3–6 (W.D. Va. July 23, 2019) (holding that first degree murder under Virginia statute, which expressly includes "murder . . . by starvation," constitutes a crime of violence, and citing five other Virginia district court cases ruling consistently); *Umaña v. United States*, 229 F. Supp. 3d 388, 396–97 (W.D.N.C. 2017) (holding that murder in violation of North Carolina law is a crime of violence for purposes of a § 924(c) conviction premised upon VICAR murder, even though North Carolina's first degree murder statute expressly includes killing by starvation); *see also United States v. Arnold*, No. 15-20652-01, 2019 WL 5842925, at *2–3 (E.D. Mich. Nov. 7, 2019) (denying pretrial motion to dismiss § 924(c) claim, noting that "courts differ on whether to analyze the general federal offense or the specific state offense charged in the indictment, but they all arrive at the same conclusion: that VICAR murder is a crime of violence"); *Shrader v. United States*, No. 1:09-CR-00270, 2019 WL 4040573, at *2–3 (S.D.W. Va. Aug. 27, 2019) (holding that murder under West Virginia law, defined to include "[m]urder by poison, lying in wait, imprisonment, [and] starving," is a violent felony for purposes of the ACCA (quoting W. Va. Code § 61-2-1 ) ); *United States v. Kirby*, No. CR 11-282 JAP, 2017 WL 4539291, at *11 (D.N.M. Feb. 16, 2017) (holding that murder under New Mexico law qualifies as a violent felony under the ACCA, stating: "Surely the intentional infliction of causes resulting in the effect of dying of starvation or thirst amounts to 'force capable of causing physical pain or injury to another person.' " (quoting *Johnson* [*v. United States*] ("*Johnson I*"), 559 U.S. [133,] 140, [(2010)]).

[The petitioner], in other words, is swimming upstream. This court agrees with those courts finding that first degree murder constitutes a crime of violence for purposes of the force clause of § 924(c)(3) . . . . Specifically, as the Eighth Circuit

13

> recognized, the act of withholding food with the intent to cause a dependent to starve to death constitutes the requisite use of force. "It does not matter that the harm occurs indirectly as a result of malnutrition. Because it is impossible to cause bodily injury without force, it would also be impossible to cause death without force." *Peeples*, 879 F.3d at 287. Even the Tennessee murder-by-starvation case upon which [the petitioner] relies refers to a "pattern or multiple incidents of serious bodily injury suffered by the victim [that] were 'inflicted' by the defendant's failure to feed the victim." *State v. Bordis*, No. 01C01-9211-CR-00358, 1994 WL 672595, at *12 (Tenn. Crim. App. Dec. 1, 1994). Consequently, the court holds that murder in aid of racketeering, in violation of 18 U.S.C. § 1959(a)(1), is a crime of violence under 18 U.S.C. § 924(c)(3)(A) . . ..

*Hall*, 2021 WL 119638, at *9–10.

The federal cases on which the petitioner relies to the contrary do not involve premeditated first-degree murder. (Doc. No. 26 at 10–11; Doc. No. 32 at 5.) As it did in *Hall*, the court finds those cases unpersuasive. *Hall*, 2021 WL 119638, at *7 n.7. Accordingly, for the same reasons explained in *Hall*, the court holds that the premeditated murder underlying the petitioner's convictions for VICAR murder in Counts 2 and 6 were crimes of violence that satisfied the elements clause of Section 924(c)(3)(A). Those convictions were therefore sufficient to support the petitioner's convictions in Counts 4, 8, and 27. The petitioner is not entitled to relief on these claims as a matter of law.

## C. The Petitioner's Supplemental Claim

Fifteen months after the Sixth Circuit authorized him to file the pending Amended Motion, the petitioner filed a Supplement to Amended Motion, in which he "add[s] another reason why his conviction for Count 27 must be vacated in light of *Davis* . . .." (Doc. Nos. 11, 11-2, 24.) Specifically, the petitioner would add that conspiracy to participate in a racketeering enterprise, one of several crimes of violence on which Count 27 could have been premised (in addition to the murder in aid of racketeering addressed above), also does not qualify as a crime

14

of violence under Section 924(c)'s elements clause and, therefore, would not support his conviction on Count 27. (Doc. No. 24.)

But the petitioner does not cite any authority for his ability to unilaterally add new claims in separate filings. To the contrary, litigants may not plead their claims "in a piecemeal fashion by filing separate documents that are intended to be read together," but must file a single pleading "that is complete within itself." *Gould v. California Dep't of Corr. & Rehab.*, No. 19-CV-00015-HSG, 2019 WL 2059660, at *3 (N.D. Cal. May 9, 2019). The petitioner's Supplement is, therefore, a nullity.

Moreover, as the petitioner has acknowledged in his attempt to support the claims in his Amended Motion, "the Sixth Circuit indicated that the issue for this Court would be whether a violation of 'Tenn. Code Ann. § 39-13-202(a)(1) [which prohibits first-degree premeditated murder] categorically involves the use of violent force.'" (Doc. No. 26 at 3 (quoting Doc. No. 11 at 5).) The petitioner argues that his Supplement is valid "since the Sixth Circuit has certainly authorized an attack on the § 924(o) conviction." (*Id.* at 13.) But the Sixth Circuit authorized *a particular* attack on that conviction, based on the elements of the underlying murder. Its ruling cannot be read to authorize *any and all* attacks on the conviction.

Accordingly, any effort to amend the petitioner's authorized Amended Motion would be denied as beyond the scope of the Sixth Circuit's authorization, as another district court explained in similar circumstances:

> Petitioner's motions for leave to amend and supplement unquestionably advance claims beyond the resolution of the narrow question identified by the Sixth Circuit . . .[.] Granting Petitioner's motions for leave to amend and supplement would allow Petitioner to "impermissibly circumvent the requirement that a successive habeas petition be precertified by the court of appeals as falling within an

15

> exception to the successive-petition bar." *Gonzalez* [*v. Crosby*], 545 U.S. [524,] 532 [(2005)] (citing § 2244(b)(3)). On that basis, the Court will deny Petitioner's Motion Requesting Leave to Amend, Motion for Leave to Supplement 28 U.S.C.A. § 2255 Motion, and Motion to Amend Supplemental Pleading.
>
> Petitioner tries to avoid this result by asserting that the Sixth Circuit's authorization opened the door to a "fuller exploration" of his ACCA eligibility, generally. But the Sixth Circuit's authorization is not without limits. . . . Consistent with the statutory structure of § 2255(h), successive habeas claims are subject to careful gatekeeping by the Sixth Circuit. *See Sterling v. O'Brien*, No. Civ.A. 05CV78HRW, 2005 WL 1657086, *3 (E.D. Ky. July 14, 2005) ("The [Antiterrorism and Effective Death Penalty Act] imposed several statutory restrictions on prisoners' ability to file relief under 28 U.S.C. § . . . 2255, including . . . the stringent requirement that a prisoner who has already filed an unsuccessful § 2255 motion . . . must receive pre-authorization from the appropriate circuit court."). To allow the compounding of successive claims on top of an already second or successive claim via the liberal amendment policies of the Federal Rules would be tantamount to ignoring the mandates of §§ 2244(b)(3)(A) and 2255(h). Rules Governing Sec. 2255 Proceedings for the U.S. Dist. Courts, Rule 12.

*Busch v. United States*, No. 1:05-CR-030, 2019 WL 4751702, at *4 (S.D. Ohio Sept. 30, 2019), *certificate of appealability denied*, No. 19-4046, 2020 WL 6277420 (6th Cir. May 20, 2020).

Alternatively, the court would deny relief on the merits of the supplemental claim. Count 27 of the Second Superseding Indictment charged in relevant part as follows:

> From in and around 2006 and continuing through on or about January 2011, in the Middle District of Tennessee, the defendants . . . [27] KEAIRUS WILSON, a/k/a "Key-Thang," . . . and others known and unknown to the Grand Jury, did conspire to knowingly use and carry firearms during and in relation to, and possess firearms in furtherance of, crimes of violence for which they may be prosecuted in a court of the United States, to wit, conspiracy to participate in a racketeering enterprise, murder in aid of racketeering, and assault with a dangerous weapon in aid of racketeering, as set forth in this Superseding Indictment, which are incorporated here.
>
> All in violation of Title 18, United States Code, Sections 924(o) and 2.

(Crim. Doc. No. 1147 at 61.) The petitioner asserts that his conviction on this count was thus "possibly based on the premise that racketeering conspiracy is a 'crime of violence,'" because "the jury might have relied on the conspiracy allegation" to convict him. (Doc. No. 26 at 13.)

16

This new claim directly conflicts with the petitioner's own acknowledgment in his Amended Motion that "[i]n each of the three charges [at issue], the underlying 'crime of violence' offense was violating 18 U.S.C. § 1959(a)(1), murder in aid of racketeering." (Doc. No. 13 at 4.) It is also contrary to the Sixth Circuit's statement in authorizing the Amended Motion that the petitioner's "murder in aid of racketeering conviction" was "the predicate for the relevant convictions." (Doc. No. 11 at 4.)

The government responds that the *Shepard* documents make clear that the jury's conviction of the petitioner on this count ultimately rested on its finding, among all the possible alternative elements, that the petitioner had committed murder. (Doc. No. 25 at 16–20.) The government is correct. As discussed above, the jury convicted the petitioner of two counts of murder in aid of racketeering. Those counts alone would provide the violent crime element for his conviction on Count 27. And the jury also expressly found, with respect to the racketeering conspiracy count for which it convicted the petitioner, that "the pattern of racketeering activity agreed to by Defendant KEAIRUS WILSON included acts involving murder in violation of Tennessee law." (Crim. Doc. No. 1501 at 1.) That fact was found by the jury as an element necessary to increase what would otherwise have been the maximum penalty for violation of the racketeering conspiracy statute. *See Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000) (requiring facts that enhance a maximum sentence to be "submitted to a jury, and proved beyond a reasonable doubt"); 18 U.S.C. § 1963(a) (increasing sentence for racketeering conspiracy from 20 years to life "if the violation is based on a racketeering activity for which the maximum penalty includes life imprisonment"). Accordingly, the petitioner's underlying convictions do not allow any room for doubt that his conviction on Count 27 rests on crimes of violence.

17

## IV. CONCLUSION

For the foregoing reasons, the court finds that the petitioner is not entitled to relief under Section 2255, and his Amended Motion will be denied.

An appropriate order shall enter.

Aleta A. Trauger
United States District Judge